UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AWOKE GEBRETSADIKE,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | 22-cv-1951 (RCL) |

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia (the District) respectfully moves for summary judgment under Fed. R. Civ. P. 56(a). A memorandum of points and authorities, a statement of material facts as to which there is no genuine dispute, supporting exhibits, and a proposed order are attached for the Court's consideration.

Dated: June 11, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Rachel B. Gale*
RACHEL B. GALE [90003972]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7458

rachel.gale@dc.gov

*Counsel for Defendant District of Columbia*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025, I caused to be served a copy of the foregoing Defendant District of Columbia's Motion for Summary Judgment, and the memorandum of points and authorities, accompanying exhibits, and proposed order attached thereto by mail and served the same by email upon:

Awoke Gebretsadike
4801 3rd Street NW #2
Washington, D.C. 20011
(202) 790-8254
awokenigusse@gmail.com
*Plaintiff pro se*

/s/ Rachel B. Gale
RACHEL B. GALE
Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AWOKE GEBRETSADIKE, *Plaintiff*, v. DISTRICT OF COLUMBIA, *et al.*, *Defendants*. | 22-cv-1951 (RCL) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant District of Columbia (the District) respectfully moves for summary judgment under Fed. R. Civ. P. 56 on Plaintiff *pro se* Awoke Gebretsadike's sole remaining retaliation claim asserted under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Title VI). The undisputed facts establish that Plaintiff cannot sustain a Title VI retaliation claim against the District. *First*, Plaintiff's written complaints to the Director of the D.C. Department of Employment Services (DOES) and then-D.C. Councilmember Elissa Silverman do not constitute protected activity under Title VI. *Second*, the DOES employees' alleged use of "bad words" toward Plaintiff is not materially adverse action. *Third*, Plaintiff cannot establish a causal nexus between his phone calls with Councilmember Elissa Silverman and any materially adverse action because the District had no knowledge of the complaints. *Fourth*, the District had a legitimate, non-retaliatory reason for not giving Plaintiff the full PUA benefits he sought, and Plaintiff cannot show pretext. Because no reasonable juror could find for Plaintiff, the Court should grant summary judgment in the District's favor. *Finally*, although the District acknowledges this

Court's prior holdings to the contrary, Title VI does not encompass retaliation claims, and thus Plaintiff's sole remaining claim should be dismissed as not cognizable under the statute.

## FACTS

**Plaintiff's Pandemic Unemployment Assistance (PUA) Application**

Plaintiff first applied for Pandemic Unemployment Assistance (PUA) benefits from the District of Columbia Department of Employment Services (DOES) on April 29, 2020. Def.'s Statement of Material Facts as to Which There Is No Genuine Dispute (DSMF) ¶ 1. When Plaintiff initiated his PUA claim, he stated that February 3, 2020, was his date of impact for purposes of receiving PUA assistance. *Id.* ¶ 2. On March 11, 2020, the Mayor of the District of Columbia declared the COVID-19 pandemic a public health emergency. *Id.* ¶ 3. Subsequently, on March 30, 2020, the Mayor issued a stay-at-home order in response to the COVID-19 pandemic, which went into effect on April 1, 2020 at 12:01 am. *Id.* ¶ 4.

Because Plaintiff's reported date of impact predated the Mayor's declaration of a public health emergency and issuance of a stay-at-home order to address the COVID-19 pandemic, Plaintiff was required to submit additional information showing that his employment was affected by the COVID-19 pandemic before the Mayor issued the stay-at-home order. *Id.* ¶ 6. To substantiate that Plaintiff's date of impact was in February 2020 and prior to the date that Plaintiff initially applied for PUA benefits, Plaintiff was required to submit 2019 wage documents and weekly certifications of his wages for the weeks ending on February 15, 2020; February 22, 2020; February 29, 2020; March 7, 2020; March 14, 2020; March 21, 2020; March 28, 2020; April 4, 2020; April 11, 2020; April 18, 2020; and April 24, 2020. *Id.* ¶ 7. As of June 13, 2022, DOES records indicated that Plaintiff had not provided the requested documentation to establish that his employment had been impacted by the COVID-19 pandemic beginning in

February 2020. *Id.* ¶ 8. Plaintiff's claim was withdrawn on June 16, 2022; DOES attempted to refile the claim but was unable to do so without certain information from Plaintiff. *Id.* ¶ 9. But in August 2022, after reviewing the documentation that Plaintiff had provided, DOES determined that Plaintiff met the requirements for his PUA claim to be backdated to February 2, 2020. *Id.* ¶ 10. When DOES sought the additional information to refile Plaintiff's claim backdated to February 2, 2020, Plaintiff was informed that, without the requested information, DOES could not move forward with processing Plaintiff's PUA claim. *Id.* ¶ 11. DOES continued to contact Plaintiff until February 2023 to obtain the information needed to refile his claim and provide him with the requested PUA benefits backdated to February 2020. *Id.* ¶ 12.

On September 10, 2024, after completing a review and investigation for Plaintiff's PUA claim, DOES issued a determination that Plaintiff was eligible for PUA benefits beginning February 9, 2020, until September 4, 2021. *Id.* ¶ 13. Plaintiff was informed that, if he did not receive payment within ten days, he should call DOES's Claim Center. *Id.* ¶ 14. Plaintiff states that he has not received payment but has not called DOES's Claim Center. *Id.* ¶ 15.

**Plaintiff's Alleged Protected Activity**

On June 17, 2020, Plaintiff sent an email to the DOES OneStop email address, DOES Claims Examiner Allison Cropp-Rollins, the D.C. Office of the Inspector General, and the U.S. Department of Justice's Civil Division complaining that he "believe[s the] DC Government is targeting immigrants in this difficult time by not providing and over delaying this pandemic season assistance benefits" and asserted that "immigrant families in the [D]istrict are subjected to extra pain and suffering[] due to DC Government['s] unlawful discriminat[ion] and efficientless [sic] and bad untransparent practices." *Id.* ¶ 16. On August 27, 2020, Plaintiff called DOES to ask about increasing his weekly benefit assessment because his friends were receiving more

3

money than he was; DOES explained to Plaintiff that they could not speak to him regarding his friends' applications but that he could send qualifying information if he would like to be considered for additional funds. *Id.* ¶ 17.

On July 22, 2020, Plaintiff submitted a fax to DOES Director Morris-Hughes asserting that he "ha[s] been subjected to unnecessary bad discriminatory practices by the department [she is] leading." *Id.* ¶ 18. In his fax to Director Morris-Hughes, Plaintiff did not allege that DOES was discriminating against him based on his race, national origin, or language access. *Id.* ¶ 19.

On November 11, 2020, Plaintiff sent an email to D.C. Councilmember Elissa Silverman asserting that DOES "messed up [his] life" and "owes [him] a lot of dollars." *Id.* ¶ 20. In his email to Councilmember Silverman, Plaintiff did not mention discrimination or allege that he was being denied payment because of his race, national origin, or language access. *Id.* ¶ 21. After sending this email, Plaintiff called Councilmember Silverman's office approximately three times to complain of language issues and discrimination.[1] *Id.* ¶ 22. In his phone calls to the D.C. Council, Plaintiff allegedly complained that DOES paid people of non-Ethiopian national origin on time and the correct amounts and reported language access issues and that DOES employees used "bad words." *Id.* ¶ 23.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying evidence that shows that there is no genuine issue of

---

[1] In deposition, Plaintiff testified that the November 11, 2020 email was his "initial email" to Councilmember Silverman but also said that he called her around June 2020. *See* Def.'s Ex. 8, Pl.'s Dep. 52:19–55:14. However, this does not create a material dispute.

4

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant has made this initial showing, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In other words, "once the movant has supported a summary judgment motion by evidence of particular events, the court may properly look to the nonmovant for rebuttal evidence either 'from persons familiar with the events,'" or require "the nonmovant to 'otherwise cast more than metaphysical doubt on the credibility of the testimony.'" *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (quoting *Bias v. Advance Int'l, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990)). A trial court should enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

## ARGUMENT

The District is entitled to summary judgment on Plaintiff's Title VI retaliation claim. "To meet the prima facie elements for a claim of retaliation [under Title VI], a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity." *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 84 (D.D.C. 2003) (citing *Jones v. WMATA,* 205 F.3d 428, 433 (D.C. Cir. 2000)).

As set forth in detail below, Plaintiff cannot establish a *prima facie* Title VI retaliation claim because he cannot show that any materially adverse action was taken against him based on any protected activity. And even if Plaintiff could make out a *prima facie* claim, the District had a legitimate, non-retaliatory reason for not giving Plaintiff his full PUA benefits, and Plaintiff

5

cannot show pretext.[2]  Accordingly, the District is entitled to summary judgment on Count II of the Complaint.

I. **Plaintiff's Written Complaints to Councilmember Silverman and Director Morris-Hughes Are Not Protected Activity Under Title VI.**

To satisfy the first element for a Title VI retaliation claim, Plaintiff must demonstrate that he opposed conduct that is unlawful under Title VI.  *See Chandamuri*, 274 F. Supp. 2d at 84.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Title VI requires a showing of intentional discrimination; disparate impact is not sufficient under Title VI.  *See Gebretsadike v. District of Columbia*, No. 22-CV-1951 (RCL), 2023 WL 2708822, at *4 (D.D.C. Mar. 30, 2023).  Thus, to establish a *prima facie* Title VI retaliation claim, Plaintiff must show that he complained of intentional discrimination on the basis of race, color, or national origin.  *See id.* at *7.  Furthermore, "[plaintiff] must also demonstrate that his exercise of protected rights was known to the defendant."  *Chandamuri*, 274 F. Supp. 2d at 84.  Here, Plaintiff's written complaints to DOES Director Morris-Hughes and Councilmember Silverman cannot be used to establish a Title VI retaliation claim because they did not complain of discrimination based on race or national origin.

---

[2]     This Court has applied the legal standard applicable to Title VII claims in analyzing Title VII retaliation claims.  *See Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 83 (D.D.C. 2003).  Accordingly, the Court should apply the *McDonnell Douglas* burden-shifting framework applied to Title VII retaliation claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006) ("Evaluation of Title VII retaliation claims follows the same burden-shifting template as discrimination claims.").

First, Plaintiff's July 22, 2020 letter to Director Morris-Hughes is not protected activity. In the letter, Plaintiff states: "The claim forms received by District of Columbia in my case has been handled differently from other similar people and business competitors I have and know. I have been subjected to unnecessary bad discriminatory practices by the department you are leading." Def.'s Ex. 8. Plaintiff does not specify the type of discrimination to which he was subjected. *See id.*; DSMF ¶¶ 18–19 (quoting Def.'s Ex. 8). The complaint did not provide DOES with notice that he was complaining of race or national origin discrimination. *See* Def.'s Ex. 8; DSMF ¶¶ 18–19; *Chandamuri*, 274 F. Supp. 2d at 84. Indeed, Plaintiff did not make *any* mention of race or national origin—instead, he baldly complained of being treated differently than "other similar people and business competitors" and "bad discriminatory practices." *See* DSMF ¶ 18; Def.'s Ex. 8. Based on the plain language of the complaint, Plaintiff's complaint to Director Morris-Hughes was not protected activity under Title VI. *See Chandamuri*, 274 F. Supp. 2d at 84 ("merely alleg[ing] that he believed he was being treated 'unfairly' and 'differently than other students'" not protected activity under Title VI). Thus, it cannot support a Title VI retaliation claim.

Second, Plaintiff's written complaint to Councilmember Silverman does not constitute protected activity under Title VI because it makes no mention of discrimination at all. In his November 11, 2020 email to Councilmember Silverman, Plaintiff alleges that "DOES messed up [his] life" and that "[i]t owes him a lot of dollars." DSMF ¶ 20 (quoting Def.'s Ex. 9, Nov. 11, 2020 Complaint to Councilmember Silverman). The email does not mention race or national origin discrimination. *See id.* ¶¶ 20–21; Def.'s Ex. 9. Because the November 11, 2020 complaint to Councilmember Silverman does not mention any conduct proscribed by Title VI, it cannot constitute protected activity under Title VI.

7

**II.     Using "Bad Words" Is Not a Materially Adverse Action.**

DOES's alleged use of "bad words" during phone conversations with Plaintiff does not constitute a materially adverse action for purposes of establishing a Title VI retaliation claim. "In the retaliation context, a material adverse action is an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 43 (D.D.C. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)) (citation modified) (applying Title VII retaliation standard to Title VI retaliation claim). "The determination of whether a particular . . . action was materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quoting *Robinson v. Winter,* 457 F. Supp. 2d 32, 35 (D.D.C. 2006)) (citation modified).

Here, in addition to an alleged reduction in payment and delay in payment of Plaintiff's PUA benefits, Plaintiff alleges that DOES employees used "bad words." *See* DSMF ¶ 23. "The Supreme Court, however, has emphasized that sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims: 'We speak of *material* adversity because we believe it is important to separate significant from trivial harms.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (quoting *Burlington,* 548 U.S. at 68)). Plaintiff's allegation that DOES employees used "bad words" when he spoke on the phone with them constitutes nothing more than a trivial harm, not a significant harm. *See id.* Indeed, any words DOES employees may have allegedly used could not have caused Plaintiff "objectively tangible harm." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) ("'[P]urely subjective injuries, such as . . . public humiliation, or loss of reputation, are not adverse actions[.]  [T]he threshold is met when an employee 'experiences materially adverse consequences affecting the

8

terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" (quoting *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C. Cir. 2002))); *Newman v. Howard Univ. Sch. of Law*, 715 F. Supp. 3d 86, 110 (D.D.C. 2024) ("actions must result in some kind of actual change in status" to be materially adverse under Title VI). Thus, DOES's alleged use of "bad words" during phone conversations does not constitute a materially adverse action in support of a Title VI retaliation claim. *See Newman*, 715 F. Supp. 3d at 110 (noting that "'contentious oral confrontation[s] involving stern words' or even 'harsh words' do not rise to the level of a materially adverse action" for purposes of a Title VI retaliation claim) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007)).

### III. Plaintiff Cannot Establish a Causal Link Between His Verbal Complaints to Councilmember Silverman and Any Materially Adverse Action Because No Evidence Exists Showing That DOES Was Aware of These Complaints.

"To prevail on his retaliation claim, [Plaintiff] must make a *prima facie* showing that the adverse action would not have occurred 'but for' the protected activity." *Chandamuri*, 274 F. Supp. 2d at 84 (citing *Gregg v. Hay–Adams Hotel*, 942 F. Supp. 1, 8 (D.D.C. 1996)). "To prove that a causal connection existed between his activities and the alleged retaliatory action, [Plaintiff] must demonstrate that [the District] knew of his protected activity and that the retaliation closely followed the protected activity." *Id.* at 85 (citing *Mitchell v. Baldrige,* 759 F.2d 80, 84 (D.C. Cir. 1985)).

Here, assuming *arguendo* that Plaintiff's phone calls with Councilmember Silverman, in which he allegedly complained to her that DOES paid people of non-Ethiopian national origin on time and the correct amounts, are protected activity, Plaintiff cannot establish that DOES was aware of these phone calls and the complaints Plaintiff says he made to the Councilmember on

9

the calls. *See* DSMF ¶¶ 22–23. Therefore, his phone calls to Councilmember Silverman cannot sustain a Title VI retaliation claim because Plaintiff has not shown causation between his complaints to the Councilmember and any materially adverse action. *See Chandamuri*, 274 F. Supp. 2d at 84 ("[A Title VI retaliation plaintiff] must also demonstrate that his exercise of protected rights was known to the defendant.").

### IV. The District Had a Legitimate, Non-Retaliatory Reason for Not Giving Plaintiff the Full PUA Benefits He Sought, and Plaintiff Cannot Show Pretext.

Even if Plaintiff could make out a *prima facie* Title VI retaliation claim, which he cannot, the District is entitled to summary judgment because it had a legitimate, non-retaliatory reason for not providing Plaintiff the full amount of PUA benefits he sought when he first initiated his application. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008) ("Even if the alleged retaliatory measures were materially adverse actions, the Government asserted legitimate, nondiscriminatory reasons for each act, and Baloch did not produce sufficient evidence that would discredit those reasons and show that the actions were retaliatory.").

Here, the undisputed record demonstrates that, at the time Plaintiff initiated his PUA application, DOES did not have sufficient information to backdate his claim to February 2020—prior to the Mayor's declaration of a public health emergency and stay-at-home order. *See* DSMF ¶¶ 6–7. And the record establishes that, as of February 2023, DOES still did not have the information it needed to process Plaintiff's claim. *Id.* ¶¶ 8–12. In September 2024, after completing a review and investigation of Plaintiff's PUA claim, DOES issued a determination that Plaintiff was eligible for PUA benefits from February 9, 2020, until September 4, 2020. *Id.* ¶ 13. Additionally, when Plaintiff asked to be considered for an increased weekly benefit assessment, DOES informed him that he could send additional information to be considered for more funds and that it could not discuss the status of other claimants. *Id.* ¶ 17.

10

The undisputed record shows that Plaintiff did not receive the PUA benefits he initially sought because DOES did not have enough information to process the request. The District thus had a legitimate, non-retaliatory reason for any delay or denial of Plaintiff's PUA claim, and no reasonable juror could conclude that the DOES's actions were pretext for retaliation. Therefore, the District is entitled to summary judgment on Plaintiff's Title VI retaliation claim.

### V. **Plaintiff's Claim Should Be Dismissed Because Title VI Does Not Encompass Retaliation Claims.**

The District acknowledges that this Court has repeatedly held that a retaliation claim is cognizable under Title VI. *See Chandamuri*, 274 F. Supp. 2d at 83; *Gebretsadike*, 2023 WL 2708822, at *6. However, neither the Supreme Court nor the D.C. Circuit has resolved this issue. *Gebretsadike*, 2023 WL 2708822, at *6. And "Title VI itself contains no statutory language prohibiting retaliation." *Newman*, 715 F. Supp. 3d at 106; *compare* 42 U.S.C. § 2000d (Title VI) (making no mention of retaliation) *with* 42 U.S.C. § 2000e-3(a) (Title VII) (explicitly outlawing retaliation); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Accordingly, Plaintiff's sole remaining Title VI retaliation claim should not stand.

### CONCLUSION

For these reasons, the Court should grant the District's motion, enter summary judgment in favor of the District, and dismiss the Complaint with prejudice.

Dated: June 11, 2025                            Respectfully submitted,

                                                      BRIAN L. SCHWALB
                                                     Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Rachel B. Gale*
RACHEL B. GALE [90003972]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7458
rachel.gale@dc.gov

*Counsel for Defendant District of Columbia*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AWOKE GEBRETSADIKE,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | 22-cv-1951 (RCL) |

**DEFENDANT DISTRICT OF COLUMBIA'S STATEMENT
OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Under Fed. R. Civ. P. 56, Defendant District of Columbia (the District) respectfully submits the following statement of material facts as to which there is no genuine dispute:

**Plaintiff's Pandemic Unemployment Assistance (PUA) Application**

1. Plaintiff Awoke Gebretsadike first applied for Pandemic Unemployment Assistance (PUA) benefits from the District of Columbia Department of Employment Services (DOES) on April 29, 2020.  *See* Ex. 1, Pl.'s Unemployment Insurance Profile.

2. When Plaintiff initiated his PUA claim, he stated that February 3, 2020, was his date of impact for purposes of receiving PUA assistance.  *See* Ex. 2, Gebretsadike Unemployment Insurance Case Notes at 154.

3. On March 11, 2020, the Mayor of the District of Columbia declared the COVID-19 pandemic a public health emergency.  *See* Ex. 3, Mayor's Order 2020-046 (Mar. 11, 2020), https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/MO.DeclarationofPublicHealthEmergency03.11.20.pdf (last visited June 11, 2025).

4. On March 30, 2020, the Mayor issued a stay-at-home order in response to the COVID-19 pandemic, which went into effect on April 1, 2020, at 12:01 am. *See* Ex. 4, Mayor's Order 2020-054 (Mar. 30, 2020), https://mayor.dc.gov/release/mayor-bowser-issues-stay-home-order (last visited June 11, 2025).

5. Plaintiff's reported date of impact of February 3, 2020, predated the Mayor's declaration of a public health emergency and issuance of a stay-at-home order to address the COVID-19 pandemic. *See* Ex. 2, Gebretsadike Unemployment Insurance Case Notes at 154; Ex. 3, Mayor's Order 2020-046; Ex. 4, Mayor's Order 2020-054.

6. Because Plaintiff's reported date of impact predated the Mayor's declaration of a public health emergency and issuance of a stay-at-home order to address the COVID-19 pandemic, Plaintiff was required to submit additional information showing that his employment was affected by the COVID-19 pandemic before the Mayor issued the stay-at-home order. *See* Def.'s Ex. 5, Plaintiff's DOES Salesforce Profile at 3–4.

7. To substantiate that Plaintiff's date of impact was in February 2020 and before the date that Plaintiff applied for PUA benefits, Plaintiff was required to submit 2019 wage documents and weekly certifications of his wages for the weeks ending on February 15, 2020; February 22, 2020; February 29, 2020; March 7, 2020; March 14, 2020; March 21, 2020; March 28, 2020; April 4, 2020; April 11, 2020; April 18, 2020; and April 24, 2020. *See* Def.'s Ex. 5, Plaintiff's DOES Salesforce Profile at 3–4.

8. As of June 13, 2022, DOES records indicated that Plaintiff had not provided the requested documentation to establish that his employment had been impacted by the COVID-19 pandemic beginning in February 2020. Def.'s Ex. 6, Email Correspondence Between Marilyn Singleton and Awoke Gebretsadike, at 224–25.

9. Plaintiff's claim was withdrawn on June 16, 2022; DOES attempted to refile the claim but was unable to do so without certain information from Plaintiff. *Id.*

10. In August 2022, after reviewing the documentation that Plaintiff had provided, DOES determined that Plaintiff met the requirements for his PUA claim to be backdated to February 2, 2020. *Id.* at 223–24.

11. When DOES sought the additional information to refile Plaintiff's claim backdated to February 2, 2020, Plaintiff was informed that, without the requested information, DOES could not move forward with processing Plaintiff's PUA claim. *Id.*

12. DOES continued to contact Plaintiff until February 2023 to obtain the information needed to refile his claim and provide him with the requested PUA benefits backdated to February 2020. *See id.* at 209.

13. On September 10, 2024, after completing a review and investigation for Plaintiff's PUA claim, DOES issued a determination that Plaintiff was eligible for PUA benefits beginning February 9, 2020, until September 4, 2021. Def.'s Ex. 7, DOES Sept. 10, 2024 Claim Determination.

14. Plaintiff was informed that, if he did not receive payment within ten days, he should call DOES's Claim Center. *Id.*

15. Plaintiff claims that he has not received payment, but he has not called DOES's Claim Center. Def.'s Ex. 8, Deposition of Plaintiff Awoke Gebretsadike (Pl.'s Dep.) 92:20–95:8.

**Plaintiff's Alleged Protected Activity**

16. On June 17, 2020, Plaintiff sent an email to the DOES OneStop email address, DOES Claims Examiner Allison Cropp-Rollins, the D.C. Office of the Inspector General, and

3

the U.S. Department of Justice's Civil Division complaining that he "believe[s the] DC Government is targeting immigrants in this difficult time by not providing and over delaying this pandemic season assistance benefits" and asserted that "immigrant families in the [D]istrict are subjected to extra pain and suffering[] due to DC Government[']s unlawful discriminat[ion] and efficientless [sic] and bad untransparent practices." Def.'s Ex. 9, June 17, 2020 Complaint; *see* Def.'s Ex. 8, Pl.'s Dep. 47:6–10, 50:11–19.

17. On August 27, 2020, Plaintiff called DOES to ask about increasing his weekly benefit assessment because his friends were receiving more money than he was; DOES explained to Plaintiff that they could not speak to him regarding his friends' applications but that he could send qualifying information if he would like to be considered for additional funds. *See* Ex. 2, Gebretsadike Unemployment Insurance Case Notes at 158.

18. On July 22, 2020, Plaintiff submitted a fax to DOES Director Unique Morris-Hughes asserting that he "ha[s] been subjected to unnecessary bad discriminatory practices by the department [she is] leading." Def.'s Ex. 10, July 22, 2020 Complaint to DOES Director.

19. In his fax to Director Morris-Hughes, Plaintiff did not allege that DOES was discriminating against him based on his race, national origin, or language. *See id.*

20. On November 11, 2020, Plaintiff sent an email to D.C. Councilmember Elissa Silverman asserting that DOES "messed up [his] life" and "owes [him] a lot of dollars." Def.'s Ex. 11, Nov. 11, 2020 Complaint to Councilmember Silverman.

21. In his email to Councilmember Silverman, Plaintiff did not mention discrimination or allege that he was being denied payment because of his race, national origin, or language. *See id.*

4

22. After sending this email, Plaintiff called Councilmember Silverman approximately three times to complain of language issues and discrimination.[3] Def.'s Ex. 8, Pl.'s Dep. 52:19–55:14.

23. In his phone calls to the D.C. Council, Plaintiff complained that DOES paid people of non-Ethiopian national origin on time and the correct amounts and reported language access issues and that DOES employees used "bad words." *Id.* at 52:19–57:18, 83:7–84:2 (describing language DOES employees allegedly used).

Dated:  June 11, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Rachel B. Gale*
RACHEL B. GALE [90003972]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7458
rachel.gale@dc.gov

*Counsel for Defendant District of Columbia*

---

[3] In deposition, Plaintiff testified that the November 11, 2020 email was his "initial email" to Councilmember Silverman but also said that he called her around June 2020. *See* Def.'s Ex. 6, Pl.'s Dep. 52:19–55:14. However, this does not create a material dispute.

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AWOKE GEBRETSADIKE,<br><br>    *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | 22-cv-1951 (RCL) |

**ORDER**

Upon consideration of Defendant District of Columbia's Motion for Summary Judgment, the memorandum of points and authorities in support thereof, any opposition and reply thereto, and the entire record, it is this _____ day of _____ 2025, hereby

**ORDERED** that Defendant's Motion is **GRANTED**; and it is further

**ORDERED** that **JUDGMENT** is entered in Defendant's favor; and it is further

**ORDERED** that the Complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

_____
ROYCE C. LAMBERTH
United States District Judge

CC:    Awoke Gebretsadike
         *Plaintiff pro se*

         Rachel B. Gale
         Assistant Attorney General
         *Counsel for Defendant District of Columbia*