UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AWOKE GEBRETSADIKE

*Plaintiff,*

v.

DISTRICT OF COLUMBIA, *et al.,*

*Defendants.*

Case No. 1:22-cv-1951-RCL

## MEMORANDUM OPINION

Before the Court is Defendant District of Columbia's Motion for Summary Judgment in this Title VI lawsuit dating back to the COVID-19 pandemic. Plaintiff Awoke Gebretsadike, proceeding *pro se*, has not opposed the District's Motion or otherwise complied with the briefing schedule set by the Court. For the reasons explained herein, the Court will **GRANT** the District's Motion and **DISMISS WITH PREJUDICE** the plaintiff's remaining Title VI retaliation claim.

### I. BACKGROUND

#### A. Factual Background

The Court recited much of the factual background to this case in its Memorandum Opinion granting in part and denying in part the District's motion to dismiss. *See* Mem. Op., ECF No. 11. The Court will therefore only recite those facts necessary to adjudicate the plaintiff's sole remaining claim: a Title VI claim for retaliation against protected activity. Plaintiff Awoke Gebretsadike is a resident of the District of Columbia who has worked as an independent contractor in the ride-for-hire business since 2014. Dep. of Awoke Gebretsadike at 18:20–22, Ex. 8 to Mot. for Summ. J., ECF No. 55-8 ("Pl.'s Dep."); *id.* at 26:2–7. The onset of the COVID-19 pandemic interrupted his business and adversely affected his income, and on April 29, 2020, he applied for

Pandemic Unemployment Assistance (PUA) from the District's Department of Employment Services (DOES). Pl.'s Profile at 1, Ex. 1 to Mot. for Summ. J., ECF No. 55-1.

In his PUA application, the plaintiff reported February 3, 2020, as the date that his business was first affected by COVID-19. Case Notes at 1, Ex. 2 to Mot. for Summ. J., ECF No. 55-2. However, the mayor of D.C. did not declare a public health emergency until March 11, 2020, so the DOES required the plaintiff to submit 2019 tax documents to substantiate his employment history. *See* Mayor's Order, Ex. 4 to Mot. for Summ. J., ECF No. 55-4; Salesforce Record, Ex. 5 to Mot. for Summ. J., ECF No. 55-5. The DOES also required the plaintiff to submit weekly certification of his wages for each week from February 10, 2020 through the date of his application on April 29, 2020. Salesforce Record at 3–4. The plaintiff then exchanged a series of emails with a DOES employee throughout early June, and the employee indicated on June 8, 2020 that the plaintiff would be receiving benefits within two days. *See* Email Exchange with DOES, Ex. 9 to Mot. for Summ. J., ECF No. 55-9.

On June 17, 2020, the plaintiff replied to the email chain, copying a generic DOES email address and the United States Department of Justice's Civil Division complaining that the D.C. government was "targeting immigrants," who consequently faced "extra pain and suffering" on account of the government's "unlawful discriminatory, efficientless [sic] and bad untransparent practices." *Id.* at 1. Around the same time, the plaintiff also spoke to a DOES manager on the phone. Pl.'s Dep. at 79:5–7.

On July 22, 2020, the plaintiff followed these exchanges with a fax to the general DOES address, which he believes made its way to DOES Director Unique Morris-Hughes. July 22 Fax, Ex. 10 to Mot. for Summ. J., ECF No. 55-10 ("July 2020 Fax"); Pl.'s Dep. 61:16–62:3. He also claims to have spoken with Director Morris-Hughes on multiple occasions between the end of

2

April and beginning of June 2020. Pl.'s Dep. 62:20–22; 65: 4–7. Finally, the plaintiff sent an email to then-D.C. Councilmember Elissa Silverman on November 11, 2020. Pl.'s Dep. 57:13–18; Silverman Email, Ex. 11 to Mot. for Summ. J., ECF No. 55-11. He claims that he then personally made three phone calls to the D.C. Council on behalf of himself and a group of unnamed "other Ethiopians" who were facing similar discrimination. Pl.'s Dep. 54:14–15.

**B. Procedural Background**

Based on the foregoing correspondence, the plaintiff filed a Complaint in the D.C. Superior Court on May 19, 2022. *See* Compl., ECF No. 1-2. The District removed the case to this Court on July 6, 2022. Notice of Removal, ECF No. 1. On the District's motion, in March 2023 the Court dismissed all of the plaintiff's claims except his claim that the DOES retaliated against him in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Mem. Op. 10–13. After over six months of the parties filing motions for extension, the Court entered a Scheduling Order in December 2023. *See* Sched. Order, ECF No. 25. As this Court has previously recounted, neither party was heard from again until July 1, 2024, when the defendants asked for an extension of time to take depositions. *See* Def.'s Mot. for Extension of Time to Take Depositions, ECF No. 27. The Court granted that request, setting August 25, 2024 as the deadline for the parties to take depositions and January 7, 2025 as the close date for all discovery. Order, ECF No. 28.

On August 23, 2024, the District once again asked for an extension of time to complete discovery. Defs.' Mot. for Extension of Time, ECF No. 33. The Court granted that request and extended the deadline for depositions to the same date that all discovery was set to close, January 7, 2025. ECF No. 39. However, once again, the District did not file anything between August 23 and January 7, the day of the court-imposed deadline. On that date, the District asked for yet another extension to complete discovery. Defs.' Mot. for Extension of Time, ECF No. 40. In

3

February 2025, the District also filed a Motion requesting a status conference. Mot. Requesting Status Conference, ECF No. 42. At the status conference, the Court ordered the plaintiff to appear for a deposition on April 21, 2025. The Court also ordered that any motions to compel discovery be filed on or before April 23, 2025 and indicated that it would not issue any further extensions of discovery.[1] The Court further issued an oral order, while the plaintiff was still in the courtroom, that all dispositive motions were to be filed on or before June 16, 2025. Minute Entry of Apr. 10. Opposition briefs were due two weeks later, or no later than June 30, 2025. *Id.* And any replies were due no later than July 7. *Id.* The Court memorialized this oral order in a written Scheduling Order that same day. Sched. Order of Apr. 10, 2025, ECF No. 47.

The record indicates that the plaintiff's deposition occurred on April 21 as ordered. The District filed its Motion for Summary Judgment on June 11. Mot. for Summ. J., ECF No. 55. The plaintiff did not file any dispositive papers by the June 16 deadline imposed by this Court. Because the plaintiff is proceeding *pro se*, this Court issued a *Fox/Neal* Order after the June 30 deadline passed to inform the plaintiff of the potential consequences of his failure to oppose the District's Motion for Summary Judgment and granting him an additional seven days to respond. Order of July 1, 2025, ECF No. 58. Still, the plaintiff has failed to file any opposition briefing, and the District's Motion is therefore ripe for review.

## II. LEGAL STANDARDS

To prevail on a motion for summary judgment, a moving party must show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it might "affect the outcome of the suit under

---

[1] The plaintiff has filed a motion for reconsideration [ECF No. 48] of this Court's denial of his request to depose Director Morris-Hughes. Because the arguments made by the plaintiff in that motion largely overlap with the arguments he makes in his Motion to Compel, the Court will issue a separate minute order denying the motion for reconsideration for the reasons contained in this Order.

4

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the dispute as to that fact must be "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Courts ruling on summary judgment may not make credibility determinations, but they must "bear in mind the actual quantum and quality of proof" necessary to prevail at trial. *Id.* at 254.

The moving party bears the burden of showing that "there is an 'absence of a genuine issue of material fact' in dispute." *DL v. Dist. of Columbia*, 730 F. Supp. 2d 84, 89 (D.D.C. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party does not have to produce evidence demonstrating the absence of a genuine issue. Instead they must "show[]. . . that is, point[] out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 326. Once the moving party has made this initial showing, the nonmoving party must do more than "resist [the]. . . motion by reference only to its pleadings." *Id.* Rather, they "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is therefore appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *DL*, 730 F. Supp. 2d at 89 (citing *Anderson*, 477 U.S. at 252).

### III. DISCUSSION

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To establish a *prima facie* case of retaliation under Title VI, the plaintiff must show that "(1) he engaged in protected activity; (2) he was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity." *Chandamuri v. Georgetown*

5

*Univ.*, 274 F. Supp. 2d 71, 84 (D.D.C. 2003) (citing *Jones v. WMATA*, 205 F.3d 428, 433 (D.C. Cir. 2000)).

### A. Some Of The Plaintiff's Activity Was Protected Under Title VI

To satisfy the first element of a retaliation claim, the plaintiff "need only prove he had a reasonable good faith belief that the practice he opposed was unlawful under Title VI." *Chandamuri*, 274 F. Supp. 2d at 71. Although the plaintiff need not use "magic words" in their complaint about discriminatory action that forms the basis of agency retaliation, they must put the defendant on notice that the allegations in the complaint are about discriminatory conduct barred by Title VI. *Id.* Here, the plaintiff alleges that he undertook three distinct protected activities. The Court will address each of these activities in turn.

#### i. The June 17, 2020, Email To DOES, DOJ, and OIG Was Protected Activity

The first activity that is potentially protected under Title VI is the plaintiff's June 17, 2020 email to a DOES employee, the generic DOES OneStop email address, and the Department of Justice's Civil Division. Because the language of the email is critical to an evaluation of whether it constituted protected activity, the Court reproduces it in full:

> Partialistic [sic] process you are doing is over delay causing extra damages and disputes with landlord and rent collectors. Process the weekly application forms already submitted to DC Government Employment Services accurately. I see it here in my end still incomplete.
>
> I am copying this message to the designated Federal civil division and Office of the Inspector General DC because I believe DC Government is targeting immigrants in this difficult time by not providing and over delaying this pandemic season assistance benefits causing additional damages and invconveniences [sic] quite contrary to the purpose and objectives of this federal program/law and its guidelines AND against the interest of the residents it governs and supposed to protect their interest&wellbeing [sic]. I respectfully request these offices to look at this matter since immigrant families in the district are subjected to extra pain and sufferings due to DC Government unlawful discriminatory, efficientless [sic] and bad untransparent practices.
>
> Mr Gebretsadike

6

Email Exchange with DOES at 2. The plaintiff confirmed at his deposition that the only complaint he made to the Office of the Inspector General was the June 17, 2020 email. Pl.'s Dep. at 50:11–19. However, he says that he followed this email up with several phone calls to DOES. In those phone calls, the plaintiff says that DOES employees "would call their colleagues and they would say bad words. They would say asshole nation, starved people. They even implied some words that connotates with religion." *Id.* at 83:18–22.

The plaintiff's actions constitute protected activity under Title VI. The language of the email indicates that the plaintiff had a "reasonable belief" that the District and DOES were denying or delaying federal benefits to individuals on account of their national origin. The District seems to concede this point, as their Motion for summary judgment omits any mention of the June 17, 2020, email and instead skips immediately to the second two alleged protected activities. Because the District fails to show that the email and alleged subsequent phone calls were not protected activity, a genuine fact issue exists as to the first prong of the plaintiff's Title VI claim.

      **ii.**    **The July 22 Fax To DOES Director Unique Morris-Hughes Was Not Protected Activity**

The next activity in question is the plaintiff's July 22, 2020 fax to the generic DOES number. In that communication, the plaintiff indicated that he had been "subjected to unnecessary bad discriminatory practices by" DOES. *See* July 22 Fax. He claims that the fax went through to Director Unique Morris-Hughes, and that he subsequently spoke with the Director on at least one occasion. Pl.'s Dep. at 64:19–21. He also claims that he spoke with other managers at DOES, but that he could tell when he was speaking with Director Morris-Hughes "from her voice." *Id.* at 65:7.

The July 22, 2020 fax was not protected activity under Title VI. Even assuming the fax went through to Director Morris-Hughes, the language of the fax does not indicate that the plaintiff

7

was complaining of discrimination based on "race, color, or national origin" as required by Title VI. Instead, it merely claims that he was subject to "bad discriminatory practices" without providing any specific information. The plaintiff does not indicate that he is of Ethiopian descent, nor does he mention the basis upon which the DOES is allegedly discriminating. He could have been alleging discrimination based on class, education level, or any other number of characteristics. But as this Court has held before, being treated "unfairly" is not the same as being discriminated against within the meaning of Title VI, and the plaintiff's fax does not allege an actionable claim under Title VI. *Chandamuri*, 274 F. Supp. 2d at 84.[2]

### iii. The November 11, 2020 Email To D.C. Councilmember Silverman Was Not Protected Activity

The plaintiff's November 11, 2020 email to former D.C. Councilmember Elissa Silverman does not constitute protected activity. In the email, he claims that DOES "messed up [his] life," but he fails to allege any discriminatory conduct. *See* Silverman Email. Because the email fails to allege any discriminatory conduct prohibited by Title VI, it does not constitute a protected activity.

## B. The District Has Failed To Point Out An Absence Of Evidence To Support The Plaintiff's Claim That He Suffered Adverse Action

The second element of a *prima facie* Title VI retaliation is that the plaintiff be "subjected to adverse action." *Chandamuri*, 274 F. Supp. 2d at 71. "In the retaliation context, a material adverse action is an action that 'might have dissuaded a reasonable worker from making or

---

[2] Furthermore, the plaintiff has provided no evidence that the phone calls he made to DOES ever connected him to Director Morris-Hughes. Therefore, even if there were evidence to show that the plaintiff spoke to the Director, he has not "demonstrate[d] that [she] knew of his protected activity." *Chandamuri*, 274 F. Supp. 2d at 84. And knowledge of the protected activity is a prerequisite to demonstrating causation under the third prong of a Title VI retaliation claim. *Id.*

8

supporting a charge of discrimination.'" *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 43 (D.D.C. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Here, the only protected activity undertaken by the plaintiff was the June 17, 2020, email. Without briefing from the plaintiff, it is hard to know what he believes the adverse action taken by the District was. But presumably, he would have alleged—as he did in his deposition—that the DOES did not pay him, reduced the amount they paid him, and denied him due process. Pl.'s Dep. at 69:3–13. The District's position is that the plaintiff did not suffer adverse action on account of this protected activity because "in addition to an alleged reduction in payment and delay in payment" the plaintiff was merely subjected to "bad words." Mot. for Summ. J. 8. But this begs the question: would a reduction or delay in payment of benefits "dissuade a reasonable worker from making or supporting a charge of discrimination"? *Kimmel*, 639 F. Supp. 2d at 34. Of course it would! The District fails to engage with the allegation in the plaintiff's complaint that DOES employees reduced and delayed his payment in retaliation for his June 17, 2020, email. Instead, the District spends its scant briefing on the adverse action issue arguing that the use of bad words by DOES is a "trivial harm." Mot. for Summ. J. 8–9.

The Court agrees that the use of "bad words" by DOES employees likely would not constitute adverse action sufficient to support a Title VI retaliation claim, but that misses the point. The plaintiff's deposition reveals four potentially adverse actions he suffered at the hands of the DOES: not being paid, being paid in a reduced amount, being denied due process, and being subjected to "bad words." Pl.'s Dep. at 69:1–20. The District focuses solely on the bad words, but in doing so it has failed to meet its burden of "pointing out to the district court . . . that there is an absence of evidence to support" the plaintiff's case with respect to reduced or delayed payments

9

because it has not pointed the Court to *any* evidence in the record on this point. *Celotex*, 477 U.S. 317, 325. The Court therefore cannot grant summary judgment as to this element of the claim.

### C. The Record Does Not Support A Causal Link Between The Alleged Adverse Action And The Plaintiff's Protected Activity

The third element of a Title VI retaliation claim requires a plaintiff to show that "there existed a causal link between the adverse action and the protected activity." *Chandamuri*, 274 F. Supp. 2d at 71 (D.D.C. 2003). To establish this element, the plaintiff must show that the agency "knew of his protected activity and that the retaliation closely followed the protected activity." *Id.* at 85. In other words, the plaintiff must show "that the adverse action would not have occurred 'but for' the protected activity." *Id.* at 84.

Here, the adverse action is an alleged reduction in payment, and the protected activity is the June 17, 2020 email. The record reveals no genuine dispute as to whether the plaintiff's payment was reduced or delayed *after* the June 17, 2020, email, and so the plaintiff has failed to show that the email was a but-for cause of the adverse action. And during his deposition, the plaintiff confirmed that DOES began withholding payment of his benefits "around June of 2020." Pl.'s Dep. at 80:6–8. He further claimed that he received payments in a reduced amount "from the very beginning." *Id.* at 80:9–11. Indeed, the impetus of the email was that the plaintiff's payment had been withheld or delayed *prior to* the date the plaintiff sent it. *See* Email Exchange with DOES.

When pressed on this timeline during his deposition, the plaintiff referred the District to the allegations in his complaint and stated that it would be "better if [the District] referred to the records because this is something that happened in 2020." *Id.* at 85:2–4. In other words, the plaintiff repeatedly—both in his deposition testimony and in briefing filed before this Court— made mere "reference only to [his] pleadings." *Celotex*, 477 U.S. at 325. And as stated *supra*, it

10

is well established that a plaintiff opposing a motion for summary judgment must provide more. Because the plaintiff has failed to do so, this Court will grant summary judgment.

## IV. CONCLUSION

The District has met its burden of showing that there is no genuine issue of material fact as to the plaintiff's sole remaining claim. Because the evidence in the record could not support a reasonable jury finding for the plaintiff, the District's Motion for Summary Judgment is **GRANTED** and the plaintiff's Title VI retaliation claim (Count II) is **DISMISSED WITH PREJUDICE.**

A separate order consistent with this opinion shall issue.

Date: 9 July 2025

Royce C. Lamberth
United States District Judge